**Barry Lee FAIRCHILD, Appellant,**

v.

**A.L. LOCKHART, Director of the Arkansas Department of Correction, Appellee.**

No. 87–2417.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1988.

Decided Sept. 26, 1988.

Rehearing and Rehearing En Banc Denied Nov. 9, 1988.

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

Jack Gillean, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before ARNOLD, Circuit Judge, ROSS, Senior Circuit Judge, and WOLLE,[*] District Judge.

ARNOLD, Circuit Judge.

Barry Lee Fairchild was convicted of the capital murder of Marjorie Mason and sentenced to death. The Arkansas Supreme Court affirmed the conviction and sentence on direct appeal, *Fairchild v. State,* 284 Ark. 289, 681 S.W.2d 380 (1984), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2346, 85 L.Ed.2d 862 (1985), and, aside from giving Fairchild a choice between electrocution and lethal injection as the manner of execution, denied post-conviction relief. *Fairchild v. State,* 286 Ark. 191, 690 S.W.2d 355 (1985). After Fairchild filed this petition for writ of habeas corpus in the District Court,[1] he decided to withdraw the

petition and proceed to execution, because he considered death preferable to life in prison without parole, which he thought was the best result he could hope for on habeas. The District Court found Fairchild competent to waive collateral review, but after a court-appointed expert (who is Fairchild's current lawyer) had analyzed the case, Fairchild decided to pursue two grounds which could win him a new trial, as opposed to resentencing, if he prevailed. So Fairchild dropped all claims but the two before us; no one questions the validity of this waiver.

The issues before us are whether Fairchild's trial lawyers were constitutionally ineffective for not challenging the legality of the arrest warrant (for an unrelated charge) on which he was arrested, and whether Fairchild was coerced into confessing to the Mason murder. In a thoughtful and thorough opinion, 675 F.Supp. 469 (E.D.Ark.1987), the District Court rejected these claims. We affirm.

I.

In December, 1982, an arrest warrant for Fairchild was issued by the Clerk of the Municipal Court of Little Rock, Arkansas, in connection with an alleged attempted capital murder of a Little Rock police officer, Joe Oberle. Fairchild had not been arrested by February 26, 1983, the date Mason was murdered. When Fairchild became a suspect in that murder, he fled Little Rock and boarded a bus for California. He escaped from the bus when police stopped it in Russellville, Arkansas, and was arrested there three days later after an intensive manhunt. A few hours later, after having been brought back to Little Rock, Fairchild twice confessed to the murder on video tape and took the investigating officers on a "tour" of places where different parts of the crime had occurred.

Fairchild's trial lawyers moved to suppress this evidence on the ground that

---

[*] The Hon. Charles R. Wolle, United States District Judge for the Southern District of Iowa, sitting by designation.

[1] The Hon. Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

there was no probable cause to arrest for the Mason murder. The prosecutor defeated the motion by arguing that the arrest was on the Oberle warrant, not the Mason murder. Fairchild's lawyers did not question the adequacy of the warrant. In his habeas petition, Fairchild argues that this failure amounted to ineffective representation. As explained in *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), to prevail on this claim Fairchild must show not only that his lawyers' representation fell below an objective standard of reasonableness, but also that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence...." *Id.* at 375, 106 S.Ct. at 2583. The District Court rejected this claim. It ruled that Fairchild's arrest did not violate the Fourth Amendment, so the evidence would not have been suppressed, and Fairchild therefore could not establish actual prejudice on his claim of ineffective assistance.

■ To explain why we affirm this determination, we need only briefly recount the District Court's reasoning. First, the Court held the procedures underlying the issuance of the Oberle warrant constitutionally defective, see 675 F.Supp. at 477–79, and the evidence obtained in reliance on that warrant excludable under the rule of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), see 675 F.Supp. at 479–87. Second, it ruled that there was no probable cause to make a warrantless arrest of Fairchild for the Oberle attempted murder. *Id.* at 487–88. But it did find that, at the time Fairchild was arrested in Russellville, there was probable cause to make a warrantless arrest for the Mason murder. *Id.* at 488–89.[2] Thus, the Court concluded that the arrest was valid under the Fourth Amendment and provided no basis on which to suppress evidence obtained in the subsequent interrogations.

Our review of the District Court's factual findings is limited to a determination of whether they are clearly erroneous. *Campbell v. Minnesota*, 553 F.2d 40 (8th Cir.1977). Under the standards that govern this inquiry, see *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), we must affirm. To the extent that Fairchild's attack on the findings implies that the police were lying about the tips they received, and asserts that there are innocuous, non-criminal explanations for other, apparently damning facts, such as Fairchild's flight from Little Rock at the time he became a suspect, the attack fails because the District Court rejected that version of the events, and its "account of the evidence is plausible in light of the record viewed in its entirety." *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511. To the extent that Fairchild's attack isolates the various bits of information the police had, and views them separately, it

---

**2.** We quote the District Court's summary of the evidence which, taken together, demonstrated probable cause:

> At the time of the arrest, then, police had received various reports that the hat found at the scene of the murder appeared to be petitioner's; that petitioner had a history of sexual assault in the company of his brother; that petitioner and his brother had kidnapped, raped and murdered Ms. Mason; that the pair had escaped from the scene of the crime in a manner identical to that actually witnessed by the police; and that petitioner was actively seeking to evade capture. This combination of evidence gathered from various sources, including the police themselves as parties familiar with petitioner's habits, constitutes a mutually corroborating network of information which, in the Court's estimation, clearly serves to establish probable cause under the totality standard set forth in [*Illinois v.*] *Gates,*

[462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)].
675 F.Supp. at 489.

The parties informed us at oral argument that the hat described by the District Court in this passage was found not at the scene of the murder, but near the place where two suspects had abandoned Mason's car after having been pursued by the police soon after Mason was killed. We have confirmed this in our review of the record. But this is only a minor discrepancy in the Court's findings and certainly is immaterial to the probable-cause determination. The material points about the hat were that it was found at a place where one of the suspects could have dropped it, and three different people, two of them police officers, independently identified the hat as similar to one Barry Lee Fairchild was known to wear. Thus it supplied the initial clue that Fairchild might have been involved.

fails because the relevant legal standard is whether all the evidence, in the aggregate, amounts to probable cause.

Nor do we doubt the correctness of the Court's legal conclusion based on these facts, that the police had probable cause to arrest Fairchild for the Mason murder. In addition to the other information set forth in note 2, *supra,* the police had an informant's tip that Fairchild had committed the murder, and details of the tip were corroborated by other information within the knowledge of the police. See *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959).

## II.

Fairchild also urges that his conviction be reversed and a new trial ordered because the two videotaped confessions and the testimony regarding the "tour" of the different scenes of the crime (essentially, another confession), which the prosecution introduced at trial, were coerced. At the suppression hearing in the state court, Fairchild claimed that he was beaten and threatened by the police after his return to Little Rock, and forced to tell a story fabricated by the police before the video camera. The state court rejected Fairchild's testimony and found the confessions voluntary. Under *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985), federal habeas courts must presume that the findings of historical fact underlying that ruling are correct.

At the hearing in the District Court, Fairchild reiterated his account of the brutality and threats in Little Rock, and also, for the first time, testified that he had been slapped and yelled at by a police officer and intimidated by police dogs in Russellville immediately after his arrest. A former Russellville police officer corroborated this testimony, but all of the other witnesses, also police officers, and Fairchild's earlier statecourt testimony contradicted it. The District Court discredited the testimony of Fairchild and the former officer. See 675 F.Supp. at 473. It found that the only force used against Fairchild before he confessed was that which "was necessary and incidental to the arrest. No force or threats or physical coercion were used against Mr. Fairchild on the trip back from Russellville to Little Rock, or at the Little Rock facility." *Ibid.* The Court found further that Fairchild was not interrogated about the Mason murder until he arrived at Little Rock, *ibid.;* that he was not interrogated until after he was given his *Miranda* warnings, *id.* at 473–74;[3] and that no police officer suggested what Fairchild should say on camera. *Id.* at 474. It concluded that Fairchild's confessions were voluntary. *Id.* at 491.

We affirm. Resolution of the factual dispute underlying this issue depends on an assessment of the credibility of the various witnesses involved.[4] This task is almost entirely within the province of the District Court, and its findings on credibility "can virtually never be clear error." *Anderson v. City of Bessemer City,* 470 U.S. at 575, 105 S.Ct. at 1512. On the record before us, we have no basis for rejecting the Court's

---

3. The District Court did not state this finding in so many words, but we think it is clearly implied in the cited portions of the Court's opinion. We are bolstered in this conclusion by language in section I.B.3. of the District Court's conclusions of law, where it described a Supreme Court holding that it found to be on all fours with this case: "The Supreme Court has clearly indicated ... that a mere determination that a suspect has been given his *Miranda* warnings and that the ensuing confessions were voluntary under the Fifth Amendment will not suffice to purge the taint of a Fourth Amendment violation." 675 F.Supp. at 489 (citation omitted).

4. Fairchild argues that two of his confessions are on videotape, which are "documentary evidence" that we can view for ourselves, and we should therefore not apply the clearly erroneous standard insofar as the tapes themselves bear on the fact issues before us. We are invited to view the tapes in order to assess Fairchild's demeanor and to determine whether he was coached in his answers by the police. Ours is an appellate review, however, and we decline to view the tapes for the purposes Fairchild suggests. This Court is not suited to hearing evidence and making findings of fact. That is a function for the district courts. Rule 52(a) applies to findings of fact based on documents.

credibility determinations. And on the facts as they come to us, we agree with the conclusion that Fairchild was not coerced into confessing.

### III.

We affirm the judgment. Our mandate will be stayed until the time for seeking a writ of certiorari in the Supreme Court has expired. If Fairchild petitions for certiorari, our mandate will be stayed until we receive notice that certiorari has been denied, or until we receive the mandate of the Supreme Court. We appreciate the diligent service of Fairchild's court-appointed counsel.

It is so ordered.