Robert Alton HARRIS, Petitioner,

v.

D. VASQUEZ, Warden of the California State Prison at San Quentin, Respondent.

No. 90–55402.

United States Court of Appeals, Ninth Circuit.

March 30, 1990.

See also, 9th Cir., 885 F.2d 1354.

Charles M. Sevilla and Michael J. McCabe, San Diego, Cal., for petitioner.

Louis R. Hanoian and Jay M. Bloom, San Diego, Cal., for respondent.

## SUMMARY

### Constitutional Law

Granting a certificate of probable cause to appeal from the district court's denial of a petition for a writ of habeas corpus, Judge Noonan of the court of appeals stayed the petitioner's execution until further action by the court.

Petitioner Robert Alton Harris moved the court for the issuance of a certificate of probable cause to appeal from the denial of his petition for a writ of habeas corpus which was entered on March 28, 1990 and requested the court to issue a stay of his execution pending the resolution of the appeal in this case to the court of appeals.

[1] Harris presented by affidavit the opinions of a reputable clinical psychologist and a reputable psychiatrist that psychiatric help given him at the penalty phase was incompetent. He was entitled to competent assistance. [2] The district court held that the issue should have been raised in one of the two previous petitions for habeas corpus. Harris answered that the State denied him funds for the kind of tests that

have now raised the issue of competency of psychiatric help he received from the State in 1979. Only the volunteering of funds by his lawyers after filing of the second federal petition has produced the evidence that is the basis for his claims. [3] A second way of viewing the claim is that the constitutional right to competent assistance was only definitely established by *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Harris now urged a new fundamental rule that was not available to him at the time of the previous petitions. [4] If speedy justice in capital cases is a desideratum, the Constitution should be amended to make it attainable. As the Constitution now stands, the federal courts are committed to a process in which speed is sacrificed to thoughtful examination, and rough and ready justice for heinous crimes has been replaced by deliberate examination and dispassionate review. [5] Judge Noonan concluded that the issue raised by Harris' first claim is debatable among jurists of reason and could be resolved in different ways. There are substantial grounds upon which relief might be granted.

## ORDER

NOONAN, Circuit Judge:

Robert Alton Harris, the petitioner, moves this court for the issuance of a certificate of probable cause to appeal from the denial by the district court of his petition for writ of habeas corpus which was entered on March 28, 1990 and requests this court to issue a stay of his execution pending the resolution of the appeal in this case to this court.

*The issue before this court.* The issue before this court is not the rightness or wrongness of the death penalty or its wisdom or unwisdom or its constitutionality or unconstitutionality. It is not the task of this court to make workable or unworkable a particular state statute, even one invested with the grave symbolic significance of capital punishment. It is not the responsibility of this court to perform the functions of the state judicial system or to repeat mechanically the conclusions of that system even though thoughtful and experienced and conscientious judges of that system have passed on the petitioner's claims and found them wanting. It is our ultimate task to decide whether the petitioner's rights under the Constitution of the United States have been violated.

That ultimate task cannot be discharged without facing a preliminary issue which must be addressed now: is there a basis for staying the petitioner's execution scheduled for April 3? If there is, a certificate of probable cause must be issued.

Probable cause "requires something more than the absence of frivolity." Petitioner must make "a substantial showing of the denial of a federal right." This standard does not mean that the petitioner show that he will prevail on the merits. "Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle,* 463 U.S. 880, 893, n. 4, 103 S.Ct. 3383, 3394, n. 4, 77 L.Ed.2d 1090 (1983). (emphasis in original).

When a certificate of probable cause is issued, the petitioner "must then be afforded an opportunity to address the merits, and the court of appeals is obligated to decide the merits of the appeal. Accordingly, a court of appeals when necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal." *Id.* at 893–894, 103 S.Ct. at 3395.

Second and successive federal habeas corpus petitions "present a different issue." The granting of a stay "should reflect the presence of substantial grounds upon which relief *might* be granted." *Id.* at 895, 103 S.Ct. at 3396. (emphasis supplied). The petitioner's petition here is his third in the federal courts.

THE SUBSTANTIAL GROUND THAT MIGHT JUSTIFY RELIEF IN THE PRESENT CASE:

THE RIGHT TO COMPETENT PSYCHIATRIC ASSISTANCE IN THE DEATH PENALTY PHASE OF THE TRIAL.

■ Harris' first asserted basis for relief is as follows: He presents by affidavit the opinions of a reputable clinical psychologist and a reputable psychiatrist that psychiatric help given him at the penalty phase was incompetent. He was entitled to competent assistance. The Supreme Court has stated that "when the State has made the defendant's mental condition relevant to his criminal capability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense." *Ake v. Oklahoma*, 470 U.S. 68, 80, 105 S.Ct. 1087, 1095, 84 L.Ed.2d 53 (1985).

In particular, "when the State presents psychiatric evidence of the defendant's future dangerousness" in a capital sentencing proceeding, the defendant is entitled to psychiatric assistance. *Id.* at 83–84, 105 S.Ct. at 1096. Psychiatric testimony is typically a battle of experts. The battle is one-sided or non-existent if the defendant has no competent psychiatric witness on his side. As the Court puts it: "Without a psychiatrist's assistance, the defendant cannot offer a well-informed expert's opposing view and thereby loses a significant opportunity to raise in the jurors' minds questions about the State's proof of an aggravating factor." *Id.* at 84, 105 S.Ct. at 1097.

In the capital sentencing proceeding, the State did offer the testimony of Dr. Griswold, a psychiatrist, as to Harris' future dangerousness. If Harris was denied competent psychiatric assistance, he was denied a federal constitutional right of due process of law secured by *Ake*.

■ It is reasonably arguable that we cannot determine on this record whether Harris was denied competent psychiatric assistance and that accordingly the case must be remanded to the district court to take evidence on this issue. In habeas proceedings under 28 U.S.C. § 2254, an evidentiary hearing is required when: (1) the petitioner's allegations, if proved, would establish the right to relief (prima facie case); and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. *Van Pilon v. Reed*, 799 F.2d 1332, 1338 (9th Cir.1986). The state court trier of facts has not found the relevant facts. The petitioner's allegations, if proved, would establish a right to relief.

The district court held that the issue should have been raised in one of the two previous petitions for habeas corpus. The answer made by Harris is that the State denied him funds for the kind of tests that have now raised the issue of the competency of psychiatric help he received from the State in 1979. Only the volunteering of funds by his lawyers after the filing of the second federal petition has produced the evidence that is the basis for his claim.

No abuse of the writ occurs "unless (1) the petitioner has made a conscious decision deliberately to withhold them [the claims], (2) is pursuing 'needless piecemeal litigation,' or (3) has raised the claims only to 'vex, harass, or delay.'" *Harris v. Pulley*, 852 F.2d 1546, 1572 (9th Cir.1988). As the evidence was, at least arguably, newly-discovered, there was no conscious decision to withhold it, and arguably one cannot say that the litigation is needlessly piecemeal nor, arguably, is the claim raised only to vex, harass or delay.

A second way of viewing the claim is that the constitutional right to competent psychiatric assistance was only definitely established by *Ake* in 1985, three years after the second federal petition was filed. The rule was new in 1985 when the Court in *Ake* considered "whether fundamental fairness today" required such assistance. *Ake*, 470 U.S. at 85, 105 S.Ct. at 1097. The petitioner is now urging a new, fundamental rule that was not available to him at the time of the previous petitions.

It is objected that if the rule is new, it cannot be invoked in this collateral attack on the State judgment. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989), extended to capital

cases by *Penry v. Lynaugh*, —— U.S. ——, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989). *Teague*, however, contains an exception: the new rule may be invoked if it "implicate[s] the fundamental fairness of the trial" and enhances the "accuracy of the convictions." *Teague*, 109 S.Ct. at 1076. The analysis in *Ake* by the Supreme Court of the need for psychiatric assistance shows that, at least arguably, the rule is one of fundamental fairness, enhancing the accuracy of the jury's conclusions. The accuracy of the jury in imposing the death penalty is arguably as important as the accuracy of the jury in finding guilt.

The objection may be made that the requirement of psychiatric assistance at the death penalty phase is only a dictum in *Ake* because the Court also found a psychiatrist necessary at the earlier guilt phase of the trial and so had no need to reach the sentencing phase. This point is made by Justice Rehnquist, the sole dissenter in *Ake*. 470 U.S. at 92, 105 S.Ct. at 1100. The response to this argument would run that it is not customary to read opinions of the Supreme Court so narrowly when they address major questions.

The state, as the district court observed, is entitled to due process just as much as the petitioner. In considering what process is due, it is appropriate to consider the gravity of the harm to the petitioner if his execution is not stayed. *Barefoot*, 463 U.S. at 893, 103 S.Ct. at 3394. It is equally appropriate to consider the harm to the state if a stay is granted. The state has a legitimate interest in its statutes being carried out and its just penalties exacted. The state also has an interest in its punishments being carried out in accordance with the Constitution of the United States. For eleven years this latter interest of the state has predominated over its interest in execution of the penalty.

It is understandable that those charged with the responsibility of defending the state's interest should now be insistent that the punishment imposed on the petitioner take place. But the years of litigation are not the fault of the petitioner, nor are they attributable to manipulation by his lawyers. In the petitions for habeas corpus whose adjudication has taken so much time the petitioner presented not frivolous, not unsubstantial, but serious questions whose resolution required argument, research, analysis, and deliberation. It was the state's own interest in constitutional process that was protected in the resolution of those questions. If the state's interest in exacting the penalty is again postponed it is in vindication of the state and federal interest that no one be put to death without due process of law.

Such a process under our precedents has made speedy justice difficult. If speedy justice in capital cases is a desideratum, we should amend the Constitution to make it attainable. As the Constitution stands, the federal courts are committed to a process in which speed is sacrificed to thoughtful examination, and rough and ready justice for heinous crimes has been replaced by deliberate examination and dispassionate review.

I conclude: The issue raised by the petitioner's first claim is debatable among jurists of reason. The issue could be resolved in different ways. There are present substantial grounds upon which relief *might* be granted. It is unnecessary to address petitioner's other claims at this time. The certificate of probable cause is granted. The petitioner's execution is stayed until further action by the court.

ALARCON and BRUNETTI, Circuit Judges, did not participate in the decision to grant the applications. *See* Ninth Circuit General Order 6.3(e) ("Any member of the [motions] panel may enter an order granting [an] application" for a stay of execution).