Barry Lee **FAIRCHILD**, Appellant,

v.

**A.L. LOCKHART**, Director, Department of Correction, State of Arkansas, Appellee.

No. 89–1552.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 15, 1989.

Decided April 17, 1990.

Opinion on Denial of Rehearing and Rehearing En Banc June 25, 1990.

Richard H. Burr, New York City, for appellant.

Jack Gillean, Little Rock, Ark., for appellee.

Before ARNOLD and MAGILL Circuit Judges, and ROSS, Senior Circuit Judge.

ARNOLD, Circuit Judge.

Barry Lee Fairchild is under sentence of death for the 1983 murder of Marjorie Mason. His conviction was affirmed on direct and collateral review by the Arkansas Supreme Court. He then petitioned the federal courts for habeas corpus relief. His petition was denied, and we affirmed. *Fairchild v. Lockhart*, 857 F.2d 1204 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 884, 102 L.Ed.2d 1007 (1989).

Fairchild has now filed a second petition. Originally, he offered two new grounds for relief. First, he claimed that his alleged mental retardation prevented an intelligent and knowing waiver of his constitutional rights before he made the video-taped confessions used against him at trial. Therefore, he argued, the confessions were inadmissible. The District Court rejected this claim, and Fairchild has abandoned it on appeal. We shall therefore not discuss it. Second, Fairchild claimed that Arkansas's failure to discover his mental retardation rendered its pre-trial evaluation of his mental condition professionally inadequate. This failure, he continues, denied him due process of law because it prevented his jury from fully considering evidence of his mental retardation in their evaluation of whether to believe his confessions.

This second claim is the only one now before us. In a thorough opinion, the District Court[1] analyzed and rejected both of Fairchild's new contentions.[2] *Fairchild v. Lockhart*, No. PB–C–85–282, slip op., 1989 WL 48894 (E.D.Ark. April 4, 1989). This is Fairchild's appeal from the District Court's dismissal of his habeas petition. We affirm that dismissal on both procedural and

---

1. The Honorable Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. Fairchild does not argue that his alleged retardation disables the State from executing him under the Eighth Amendment. He has deliberately chosen not to press claims going only to his sentence. Neither he nor anyone acting in his behalf challenges his competence to make this choice.

substantive grounds. Fairchild's successive petition fails because he is procedurally barred from forwarding his new claim, and because it abuses the writ of habeas corpus. Fairchild's petition also fails on the merits: he received due process of law.

## I.

█ Fairchild's second habeas petition stumbles at the threshold; he cannot overcome the procedural obstacles facing his new claim. First, the issue raised in Fairchild's successive petition is procedurally barred. He failed to make his due-process claim in the Arkansas courts and is precluded from doing so now under their procedural rules. Fairchild is likewise precluded from arguing this point in his federal habeas petition—unless he can show "cause" for his procedural default in the state courts and "prejudice" resulting from that default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We find no objective cause in this record to excuse Fairchild's default. Nor is there any basis for an exception to the *Wainwright* rule.

█ The District Court erred in holding that the lack of discovered evidence about Fairchild's retardation at the time of his direct appeal and state collateral attack satisfied the cause requirement. Evidence of Fairchild's mental condition was available at trial (and after) from his school records, and there is no reason why the same evidence now urged in his favor could not have been offered then. Not discovering that information was counsel's omission, and there is no claim that this omission rises to the level of ineffective assistance of counsel. *Compare Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (constitutionally ineffective assistance of counsel establishes cause).

There are excellent reasons for the rule that claims not properly preserved in the state courts are normally not open on habeas. The trial in the state court should be the main judicial event. "Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Wainwright*, 433 U.S. at 90, 97 S.Ct. at 2508. Because Fairchild has no legally sufficient cause to excuse his failure to argue his new contention before the Arkansas courts, he is barred from arguing the point now.

█ Fairchild's successive petition is also an abuse of the writ. While 28 U.S.C. § 2244(b) clearly contemplates that there can be legally sufficient reasons to entertain a successive petition, no such reason has been offered here. The District Court relied on the fact that Fairchild's life was at stake, and his mental capacity at issue, in agreeing to consider his successive petition. That is not the law. In death-penalty cases, as in all cases, it is, with some exceptions, an abuse of the Great Writ to assert new grounds for relief that were available at the time of an initial petition. *Woodard v. Hutchins*, 464 U.S. 377, 380, 104 S.Ct. 752, 753, 78 L.Ed.2d 541 (1984) (per curiam) (Powell, J., concurring, joined by a majority of the Court); *Smith v. Armontrout*, 888 F.2d 530, 540 (8th Cir.1989).

Fairchild's case does not fit within any of the narrow exceptions allowing such a previously available claim to be raised in a successive petition. Our cases teach that the procedural-bar "cause" and "prejudice" analysis of *Wainwright*, and the "factual innocence" exception to that analysis, also apply to a state's abuse-of-the-writ defense. *Harper v. Nix*, 867 F.2d 455 (8th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3194, 105 L.Ed.2d 702 (1989); *Smith*, 888 F.2d at 541. But, as we indicated above, the *Wainwright* analysis and its exceptions offer no ground for Fairchild's new contentions. Moreover, Fairchild was represented by counsel in his first petition, and there is no claim of ineffective assistance at any stage in the state or federal review of his conviction. (Indeed, the same lawyer who brought Fairchild's first petition is one of counsel for him in this proceeding.) Because Fairchild's new claim and the evidence to support it were previously available, and because none of the recognized exceptions applies, considering the new

claim now would abuse the writ. *Williams v. Lockhart*, 862 F.2d 155 (8th Cir.1988).

## II.

What we have said up to now is sufficient to dispose of the case on procedural grounds. We choose nevertheless to discuss the merits also. This case will no doubt go to the Supreme Court after it leaves us, and a discussion by us of the merits may aid full appellate review. We briefly restate Fairchild's argument for the convenience of the reader: If the jury that tried him had known what is now known about his mental retardation, it would or might have disbelieved his confessions, and might therefore have acquitted him. The argument is not that the confessions were wrongly admitted, but rather that a fully informed jury would have given them less weight. This conclusion follows, so his argument runs, because of the deficiencies of retarded individuals: they are unreliable reporters because they are suggestible, and because their perceptions are filtered through (and clouded by) their mental retardation. This state of affairs, we are told, violates the Due Process Clause of the Fourteenth Amendment. The argument suffers from multiple infirmities, any one of which would be fatal.

The District Court relied on three factual findings in rejecting this due-process claim. In the first place, the Court found that Fairchild had failed to prove that Arkansas's pre-trial evaluation of his mental condition was not "professionally adequate." Second, the Court found that Fairchild was not in fact retarded. And finally, the Court credited Fairchild's confessions. That is, relying upon corroborating facts and circumstances, the District Court concluded that the appellant's confessions were reliable. The finding of reliability effectively removed the precondition— shaken confidence in his trial's outcome— of Fairchild's due-process challenge. Because it believed that there was no significant chance that a reasonable fact-finder would doubt the core of truth in Fairchild's confessions, irrespective of his mental condition, the District Court held that Fairchild received due process. *Fairchild v. Lockhart*, No. PB–C–85–282, slip op. 15–16.

Fairchild argues that the District Court clearly erred in finding that he was not retarded, and that Arkansas's pre-trial mental evaluation of him was adequate. Relying on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), Fairchild argues further that the Court erred as a matter of law in holding that he received due process. He claims he did not, because Arkansas's constitutionally inadequate pre-trial mental evaluation deprived his jury of evidence that he was retarded. We review the first two findings, as factual determinations, under the clearly erroneous standard. We review the District Court's holding on Fairchild's due-process rights *de novo*.

■ We affirm the District Court's finding that Fairchild was not retarded in 1983, and is not retarded now. We cannot say this conclusion was clearly erroneous. On the contrary, the evidence here was mixed. The appellant has undergone a vast array of tests to ascertain his competence. The scores on those tests are contradictory; with 70 serving as the threshold of retardation, his IQ has been scored as low as 60 and as high as 87. And even if all the tests agreed, that would not settle the question. Being retarded means more than scoring low on IQ tests. It also means functioning ineffectively in society. The District Court correctly noted that here the evidence weighs against finding that the appellant is retarded. His interactions with others undermine such a claim. For example, the trial court allowed Fairchild to act as co-counsel at his trial. T. 73, 397. On the basis of his dealings with Fairchild, his habeas lawyer, Mr. Hall, noted his surprise upon discovering that some test scores indicated the appellant was retarded.

Also important is the District Court's independent finding, made several years ago, that Fairchild was competent to elect his grounds of appeal. The sense and will to pursue arguments that will either secure one's release or hasten the imposition of one's death penalty—while rejecting arguments that can secure only a sentence reduction—reveal a certain competence. While the fit between competence and lack

of retardation may be inexact, Fairchild's capacity for choice illuminates his mental situation. We are not "left with the definite and firm conviction" that the District Court made a mistake. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quotations omitted). We are left instead with the conviction that imprecision necessarily attends these attempts to measure Fairchild's mind. And we accept the District Court's finding that Fairchild is not retarded.

■ We also affirm the District Court's finding that Arkansas's pre-trial mental evaluation was professionally adequate. The appellant initially considered raising an insanity defense at trial. Prior to trial, and pursuant to trial counsel's motion, Fairchild's mental condition was evaluated at the Arkansas State Hospital. Dr. David Pritchard, the staff psychologist, supervised the evaluation. He attempted to perform a complete intellectual assessment, but the appellant refused to cooperate. Dr. Pritchard's report records that Fairchild "sat with his head bowed and eyes averted" during the attempted evaluation. When the appellant did respond, Dr. Pritchard determined that Fairchild was malingering—faking his answers to skew the results. This determination was supported by the observations (based upon his daily visits) of Dr. Albert Rosendale, Fairchild's attending physician at the State Hospital.

Because of Fairchild's malingering, Dr. Pritchard suspended his testing before determining Fairchild's IQ. Other experts testified at trial to certain techniques that might have eventually elicited the appellant's cooperation. While acknowledging that such alternative techniques exist, the District Court found that failing to use those methods was not professionally inadequate. There is no clear error in the Court's finding.

■ The District Court addressed Fairchild's due-process claim through these factual findings, and by accepting the basic truth of his confessions based upon corroborating circumstances. We affirm its findings and implicit holding. Moreover, we would reach the same result even if Fairchild were retarded, and even if his pretrial mental evaluation had been inadequate.[3] Even with those assumptions, the question remains: What chance is there that the jury, if it had been fully informed about this (assumed) retardation, would have found Fairchild not guilty? Is there a reasonable probability that the new evidence of Fairchild's mental condition would have resulted in a different outcome at his trial? See *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) (elaborating this standard to evaluate the impact of ineffective assistance of counsel).[4] Unless Fairchild was prejudiced in this way by Arkansas's chal-

---

3. It is unnecessary for us to decide what level of professional competence satisfies *Ake, supra.* Even assuming an inadequate psychiatric evaluation, on the facts of this case Fairchild has not shown a violation of his due-process rights. For this reason, the recent action of Judge Noonan in staying the execution of Robert Alton Harris in California is distinguishable, even if correct. *Harris v. Vasquez*, 901 F.2d 724 (9th Cir.1990) (order of a single Circuit Judge), *motion to vacate stay denied*, —— U.S. ——, 110 S.Ct. 1799, 108 L.Ed.2d 781 (1990). Judge Noonan acted to stay an execution and grant a certificate of probable cause in order for deliberate appellate review to take place. He thought it arguable that the accuracy of Harris's jury's findings had been unconstitutionally impaired by the inadequacy of Harris's expert psychiatric testimony. Here, we have a full record and an appeal argued and considered in plenary fashion. We are satisfied that there is no appreciable chance

that the jury, had it heard all the evidence of mental retardation now offered, would have acquitted Fairchild.

4. We accept *arguendo* for purposes of this appeal only petitioner's alternative contention that this is the appropriate legal standard. We seriously doubt that any such proposition is the law. It would gravely undermine the finality of judgments whenever any arguably significant new evidence is turned up. Newly discovered evidence is not a ground for habeas relief unless it would probably (that is, more likely than not) produce an acquittal on retrial. *Dumond v. Lockhart*, 885 F.2d 419 (8th Cir.1989). *Strickland* is an ineffective-assistance case. It is not a general charter for the reexamination of state-court judgments whenever new facts are alleged. We repeat that Fairchild does not claim that any of his lawyers have been constitutionally ineffective.

lenged evaluation of his mental condition, he received all the process he was due.

We find no such prejudice in Fairchild's case. Having considered the jury's verdict in light of all the new evidence of Fairchild's mental condition, we are unpersuaded that there is a reasonable probability of a different result at a new trial. This case is most basically about Fairchild's two video-taped confessions, and whether reasonable fact-finders would have believed those confessions had they had before them the evidence casting doubt on his reliability. As stated by one of the petitioner's experts, Professor Luckasson, in her final report, it is questionable whether the appellant's confessions "actually reflect the events as experienced by Fairchild. The risk is that Fairchild's initial view of the acts was lost to the view suggested by" the officers questioning him. It is proper, therefore, to set out why we believe a reasonable fact-finder would have reached the same conclusion as Fairchild's jury, even after considering the evidence of retardation.

First, there is the question of reliability: the appellant's alleged suggestibility and blurry recall. In our view the evidence here cuts against Fairchild's contentions of mental malleability. We have viewed the video-taped confessions. They reveal rather than undermine Fairchild's competence—albeit his limited competence. He knows which side of the road the farmhouse where the rape and murder occurred is on, even if he does not know his right from his left hand. T. 1587. He does not accept every suggestion of his interrogators. Fairchild maintained that the rapes occurred on the floor of the farmhouse, in spite of an officer's question suggesting a mattress was used. T. 1594. At one point Fairchild was asked whether Harold Green (his supposed partner in the crime) raped Lt. Mason "prior" to shooting her.

> Mr. Fairchild: No. He did it before he did it.
> Lt. Waggoner: You're saying he raped her before he shot her?
> Mr. Fairchild: Yeah. Right.

T. 1580. Fairchild appears to have misunderstood the word "prior," taking it to mean "after." His initial answer, however, is correct on its own terms. Fairchild's response reflects what he claims actually happened in the face of what he understood to be the officer's contrary suggestion.

Fairchild's mistakes are revealing. His errors regarding superficial details—repeated in the face of contrary suggestions by the police—demonstrate his grasp of the larger truth of his crime. The appellant well knew where the farmhouse was located, where the rapes occurred, and the sequence of events at the crime scene. That knowledge illustrates Fairchild's reliability, and that he speaks from observation rather than suggestion.

The appellant attempts to undermine his confessions by outlining the many facts about the crime that were introduced by the police officers during the confessions. The introduction of these important details through his interrogator's questions allegedly took advantage of Fairchild's suggestibility. His confessions, so the argument runs, are therefore the product of police suggestions and his mental retardation. It is true that many important details of the crime are first mentioned in the officer's questions. The appellant's contention here, however, ignores Fairchild's conversation with these officers prior to taping. In deciding his first habeas petition, the District Court found that Fairchild revealed the details of the crime (and his involvement) before the video-taped confessions were made. *Fairchild v. Lockhart*, 675 F.Supp. 469, 473 (E.D.Ark.1987). The point seems obvious: why would the police bother with taping an interrogation that hadn't already borne fruit?

The appellant's contention thus misses the mark. The District Court's earlier finding reveals that it was Fairchild—not the police officers—who did the suggesting, before the taping began. We also agree with the District Court's observation that the congruence between what Fairchild was saying and his body language further undermines his claim of suggestion. Neither we nor the District Court believe that Fairchild's confessions are entirely accurate. It is clear, for example, that Harold Green did not have any part in this crime. (In spite of what the appellant claimed in his confessions, at trial Fairchild stipulated that Green was in Colorado when Lt. Mason was murdered. T. 844–45.) But reliability does not require complete accuracy, and enough truth emerges from Fairchild's statements to establish them as a reliable report.

There is a further difficulty for the appellant: the new evidence of his mental condition is inconclusive. The evidence is a thicket of numbers, acronyms, and medical

terminology.[5] No clear answers emerge from that thicket. Fairchild has nearly as many different intelligence scores as there are tests that have been administered to him. The most favorable objective evidence suggests he is mildly retarded, the least favorable, that he is simply mentally slow. The evidence of how he functions day-to-day (what the psychologists called "adaptive behavior") is similarly mixed. Rather than compelling a reasonable fact-finder to discredit his confessions, in our view the new evidence of retardation remains indeterminate at best.

In the face of such uncertainty a reasonable fact-finder could only turn to the other evidence (information revealed apart from the recent tests and testimony) of Fairchild's competence. That evidence, both at trial and after, supports the conclusion that Fairchild was not so retarded that he admitted to a rape and complicity in a murder he did not commit. While not licensed to do so, Fairchild can drive. He held numerous part-time jobs, though admittedly without much real success. He maintained an extended relationship with a woman and her children. The jury saw Fairchild par-ticipate—albeit in a limited way at voir dire—in his own defense. T. 1448. The District Court saw Fairchild choose only avenues of appeal that would secure a reversal of his conviction. The appellant's experts attempt to explain away these actions by claiming that they comprise the "cloak of competence" affected by mildly retarded individuals like Fairchild. That explanation, however, proves too much. At some point a cloak conforms to and reveals the contours of what lies beneath it. We believe Fairchild's limited competence is revealed in his limited ability to make his way through life. Fairchild's own actions answer the question of reliability, and undermine the inconclusive new evidence of his retardation.

Secondly, and finally, there is the question of corroboration: the circumstances surrounding and supporting Fairchild's video-taped confessions. The District Court relied, rightly in our view, on what it termed "indicia of reliability" in concluding that the appellant's confessions were believable. Among those indicators were the details of the tour of the crime locations between the two confessions: Sheriff Rob-

---

5. The following tests, which attempt to assess an individual's intellectual abilities, were administered to Fairchild:

> 1965–66 "Henmon–Nelson Intelligence Test," by the North Little Rock School System, diagnosis/score: 65 IQ, mild mental retardation.
> 1983 "Wechsler Memory Scale," by Dr. David Pritchard, Arkansas State Hospital, diagnosis/score: a severe memory problem, consistent with total dementia.
> 1983 "Memory Malingering Test," by Dr. David Pritchard, Arkansas State Hospital, diagnosis/score: gross exaggeration of memory problems, malingering.
> 1986 "Revised Beta Exam," by Dr. Richard D'Andrea, United States Medical Center for Federal Prisoners, diagnosis/score: 87 IQ, dull normal intelligence.
> 1989 "Wechsler Adult Intelligence Scale–Revised (WAIS–R)," by Denis Keyes and Ruth Luckasson, Petitioner's experts, diagnosis/score: full scale IQ of 63, verbal IQ of 69, performance IQ of 61, mild mental retardation.
> 1989 "Wide Range Achievement Test–Revised–Level 2 (WRAT–R)," by Denis Keyes and Ruth Luckasson, diagnosis/score: below 3rd-grade level in educational abilities.
> 1989 "Developmental Test of Visual Motor Integration–Beery 1982," by Denis Keyes and Ruth Luckasson, diagnosis/score: impaired perceptual abilities.
> 1989 "Woodcock–Johnson Psycho–Educational Battery," by Denis Keyes and Ruth

> Luckasson, diagnosis/score: impaired comprehension abilities.
> 1989 "Vineland Adaptive Behavior Scales," by Denis Keyes and Ruth Luckasson, diagnosis/score: deficiencies in ability to function in society, based upon Fairchild's inability to understand the questions or complete the test.
> 1989 "Competence Assessment for Standing Trial for Defendants with Mental Retardation (CAST–MR)," by Denis Keyes and Ruth Luckasson, diagnosis/score: competent to stand trial.
> 1989 "Stanford–Binet Intelligence Scale—4th ed.," by Dr. Judy Johnson, Respondent's expert, diagnosis/score: 60 IQ, plus or minus 4 points, mild mental retardation.
> 1989 "Vineland Adaptive Behavior Scale–Revised," by Dr. George Baroff, Petitioner's expert, diagnosis/score: 52, mental retardation. The test, to determine day-to-day functioning, was administered to members of Mr. Fairchild's family, and his friends.
> This list is not exhaustive: Fairchild has taken many more tests and undergone many more evaluations. This list, however, is complete as to the general tests of Fairchild's intellectual abilities. A description and evaluation of the test instruments listed above can be found either in the *Tenth Mental Measurement Yearbook* (J. Conoley and J. Kramer eds. 1989), or previous editions of that volume.

inson's nap, and the missed turn (pointed out by Fairchild) into the road leading to the abandoned farmhouse. Fairchild's expressed concern for his sister, to whom he said he gave Lt. Mason's watch, is another circumstance surrounding his confessions. This evidence, gleaned from the testimony of those present at the confessions, lends context to those statements. These background details tend to make Fairchild's confessions more believable. These facts likewise tend to make Fairchild's contention on appeal—that a jury would have discredited his confessions had they known of his retardation—less believable. Just as Fairchild's actions belie his claim of retardation, the interlocking facts and circumstances belie his claim that his confessions were the product of police suggestion. There is no reasonable probability the evidence of his retardation could explain away the circumstances corroborating his confessions.

### III.

■ Fairchild asserts that he is entitled to habeas relief unless we conclude—after considering the effect of all the newly proffered evidence of his retardation on the credibility of his confessions—that it would be irrational for a jury to acquit him. Appellant's Brief 24–25. But this sets the mark too high. That standard underestimates the weight properly accorded to the jury verdict before us. It is not impossible to conjecture that a reasonable fact-finder could come to appellant's interpretation of the evidence. That possibility, however, does not offend the Due Process Clause. The question (as we have assumed it) is instead whether the new evidence of Fairchild's retardation undermines his jury's conclusions. *Strickland, supra.*

Our confidence in this verdict remains unshaken. We have studied the transcripts (at trial and after), and weighed the appellant's arguments, with the great care required when someone's life is in the balance. Having considered the jury's verdict in light of all the new evidence of Fairchild's mental condition, we are unpersuaded that there is a reasonable probability of a different result at trial. We hold that Fairchild was accorded due process of the law. The District Court's decision dismissing Fairchild's successive habeas petition is affirmed. The stay of execution previously entered will remain in effect for the time being. If, however, no timely petition for rehearing is filed, or if one is filed and denied, we will dissolve the stay and issue our mandate.[6]

It is so ordered.

### On Denial of Suggestion For Rehearing En Banc

LAY, Chief Judge, concurring in the denial of the suggestion for rehearing en banc.

Upon receipt of the petition for rehearing and suggestion for rehearing en banc, I requested a response from the state in order to examine the district court's opinion and state court record. The district court made an exhaustive examination of the state court record and found that there was not sufficient evidence to support the issue of alleged mental retardation such that it would have altered the jury's findings at the state murder trial. The district court made an exhaustive and thorough study of the record and wrote a 136–page opinion.

I feel the district court was fully justified in allowing the filing of a successive petition and for not dismissing the petition as an abuse of the writ. Fairchild's allegation was that his trial attorneys were misled by the evidence relating to his mental condition so as to not consider an issue of mental retardation. Subsequent psychiatric evaluations and reports disclosed evidence of early retardation. Under the circumstances, I feel there were sufficient facts facing the district court requiring Judge Eisele, particularly in light of the irrevocable penalty involved, to make a thorough and exhaustive examination of the state court record. I write separately to state my disagreement with the panel's findings that Fairchild's successive petition was an abuse of the writ. The district court's findings after review of the state court record that there does not exist sufficient evidence to show that Fairchild is mentally retarded are not clearly erroneous. On this basis the petition should be denied.

6. The Court is indebted to Mr. Hall, Mr. Chambers, and Mr. Burr for their zealous and effective representation of their client.