Bobby Lewis SHAW, Appellant,

v.

Bill ARMONTROUT, Warden, Missouri State Penitentiary, Appellee.

No. 89–1055.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1989.

Decided March 28, 1990.

---

Donald L. Wolff, Clayton, Mo., for appellant.

John M. Morris, Jefferson City, Mo., for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

FAGG, Circuit Judge.

Bobby Lewis Shaw was convicted of capital murder and sentenced to death. *State v. Shaw*, 636 S.W.2d 667 (Mo.) (en banc), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). His conviction and sentence were affirmed on collateral review in the state courts of Missouri. *Shaw v. State*, 686 S.W.2d 513 (Mo.Ct.App.1985). Shaw then petitioned the federal district court for a writ of habeas corpus. *See* 28 U.S.C. § 2254 (1982). The district court denied Shaw's petition. We affirm.

The State of Missouri forbids the execution of condemned offenders who "lack[ ] capacity to understand the nature and purpose of the punishment about to be imposed upon [them]." Mo.Rev.Stat. § 552.060.1 (1986). Accordingly, "any inmate ... sentenced to death [who appears to have] a mental disease or defect excluding fitness for execution" is afforded a hearing in state court on the question of the inmate's competence to be executed. *Id.* § 552.060.2–.3. Bobby Lewis Shaw had a competence hearing under section 552.-060.3, complete with the full complement of procedural protections identified in *Ford v. Wainwright*, 477 U.S. 399, 413–17, 106 S.Ct. 2595, 2603–05, 91 L.Ed.2d 335 (1986) (plurality opinion). After receiving the reports and testimony of experts who had interviewed and tested Shaw, the state court made findings of fact:

1. ... Shaw is aware [ ] he is currently under a sentence of death ... and ... [he] understand[s] the "nature" of the punishment imposed upon him.

2. ... Shaw is cognizant [ ] his death sentence arises from a conviction of capital murder ... and ... [he] understand[s] the "purpose" of the punishment imposed upon him.

3. ... [W]hile Shaw may suffer from certain mental deficiencies, his memory of past events is intact and he is capable of answering specific questions about [the] past events [ ] his attorney may determine relate to [the legal issues still viable in his case].

4. ... [B]ased upon all of the evidence presented, Shaw ... does not lack the capacity to understand the nature and purpose of the punishment about to be imposed upon him....

Based on these findings, the state court concluded Shaw was mentally fit to be executed. *In re Competency of Bobby Lewis Shaw*, No. CV186–897CC, slip op. at 2–4 (Mo.Cir.Ct. Oct. 7, 1987), *appeal dismissed*, No. 69954 (Mo.Sup.Ct. Nov. 12, 1987).

On appeal, Shaw claims the eighth amendment categorically prohibits the execution of a brain damaged person like himself. We disagree. A condemned inmate's mental faculties need not be unimpaired for the inmate to be declared fit for execution. Mental impairments exist in sufficiently varying degrees that an inmate may be brain damaged and still possess "the mental awareness required by the [e]ighth [a]mendment as a prerequisite to [the inmate's] execution." *Ford v. Wainwright*, 477 U.S. at 419, 106 S.Ct. at 2606 (Powell, J., concurring).

Nevertheless, Shaw's cerebral condition is central to an individualized determination whether death is an appropriate punishment for him. Under *Ford v. Wainwright*, the eighth amendment bars the execution only of those persons who are "'unaware of the punishment they are

about to suffer and why they are to suffer it.'" *Penry v. Lynaugh,* — U.S. —, 109 S.Ct. 2934, 2954, 106 L.Ed.2d 256 (1989) (quoting *Ford,* 477 U.S. at 422, 106 S.Ct. at 2608 (Powell, J., concurring in part and concurring in the judgment)); *Smith v. Armontrout,* 857 F.2d 1228, 1230 (8th Cir. 1988) (per curiam). Missouri law embraces the eighth amendment standard. *Compare* Mo.Rev.Stat. § 552.060.1 *with Penry,* 109 S.Ct. at 2954. Thus, Shaw's mental condition must be measured by this standard.

■ Among the experts who presented reports and testified at Shaw's competence hearing was a psychiatrist of Shaw's own choosing. After examining Shaw, this psychiatrist prepared a report stating that Shaw exhibits "neuropsychological defects[ ] suggesting generalized cerebral impairment." Legal File of Competency Proceeding at 53. The psychiatrist reported that Shaw's "intellectual functioning correspond[s] with his tested I.Q. in the borderline range [of nonretardation]," that "his abstract thinking appear[s] to be somewhat limited," and that Shaw's mood is depressed. *Id.* at 54. Shaw's psychiatrist, however, identified no lack of mental awareness:

> Mr. Shaw [is] in touch with reality.... He [is] oriented to day, date, place, and person.
>
> ....
>
> [The] [c]ontent of [Shaw's] thought [does] not reveal any delusions, obsessions, phobias, bizarre ideas, or any psychotic features.
>
> ....
>
> ... [Shaw's] short term and long term memory [is] ... average.... [He displays] adequate attention and short term memory. Simple calculations [are] done well.... Insight and judgment [are] well[ ]preserved....

Mr. Shaw is fully aware of the nature of the punishment about to be imposed upon him. He stated that he received the death penalty on a capital murder charge involving the death of a prison guard....

Mr. Shaw knows who his attorney is.... He stated that his case is on appeal in [f]ederal [c]ourt now and further stated[ ] "they have had pretty hard evidence on both cases, so I couldn't beat the case and [the conviction] may not be overturned."

*Id.* at 53–55.

Shaw's psychiatrist repeated many of his conclusions at the competence hearing:

> Q. What did you find with respect to Mr. Shaw's memory [of] current and past events?
>
> A. [His] [m]emory was reasonably well preserved.
>
> Q. He was able to recall events, then, with reasonable accuracy?
>
> A. As far as I could verify; yes, he was able to give me the details of his family history, his previous conviction, and also his trouble as a juvenile; and that kind of thing, yes, he was able to give me some details.

Transcript of Competency Proceeding at 109. Shaw's psychiatrist also testified to Shaw's understanding of his death sentence:

> Mr. Shaw knows the type of punishment [that] will be imposed upon him to the point [ ] he knows [ ] it is the death penalty, and the reason why he received it; and, also, he knows [ ] death is final.... "[D]eath is final,["] he said ... "when a person is dead he's dead." So he understands the finality of death.

*Id.* at 103.

The state court received additional information on Shaw's mental condition from a psychologist and a psychiatrist for the state. These experts submitted a report corroborating the conclusions of Shaw's psychiatrist that Shaw displays signs of brain damage, a limited intellect, and situational depression. Legal File of Competency Proceeding at 39–41. The experts' report also agreed that Shaw is not psychotic, remains in touch with reality, and understands the circumstances of his appeals. *Id.*

At the competence hearing, the state's psychologist testified that Shaw is capable of rational thought. Transcript of Compe-

tency Proceeding at 10. He described Shaw's recollection and understanding of his offense:

Q. Did you have conversations with Shaw regarding his current condition and his death sentence?

A. Yes, I did.

Q. Did you talk about the crime?

A. Yes, we did.

Q. Was Mr. Shaw able to relate to you any details of what occurred?

A. ... [W]ith fairly directive questioning we were able to ascertain [ ] he understood the offense, and he remembered committing it, and knew what he had done, what he had been convicted of.

Q. ... [W]as he aware ... of what he was convicted of?

A. Yes, he was; he was able to tell us clearly [ ] he was convicted of first degree murder, and he was able to describe the offense, and named some of the people that were involved.

Q. ... I trust Mr. Shaw was aware of the sentence he was under as well?

A. That is correct.

*Id.* at 10–11. The state's psychiatrist added that Shaw comprehends the link between his actions and his punishment:

Q. ... [W]as Mr. Shaw aware ... of the fact [ ] he was convicted of a capital murder and sentenced to death?

A. He knew that.

....

Q. ... [I]f Mr. Shaw is led to a gas chamber and faces imminent execution, he will understand [ ] he is about to be executed?

A. Correct.

Q. Will he understand why he is about to be executed?

A. I think he will understand why, the reason with regard to the law; yes.

....

Q. ... [W]ould Bobby [Shaw] be able to understand if somebody put it to him[:] "You are going to be executed, your life is going to be taken, so that other people will learn the lesson not to commit crimes like you committed."?

A. Yes.

....

Q. ... And I take it your response would be the same if he was told at the time of his execution[:] "You are being executed, your life is being taken, because that is the retribution or the measure of pay that society requires from you because you took someone else's life" ...?

....

A. ... [H]e would understand it.

*Id.* at 56, 66–67.

Finally, each expert who submitted a report and testified at the competence hearing concluded that Shaw is fit to be executed. The state's psychologist stated that Shaw "understands the nature and purpose of the punishment about to be imposed." *Id.* at 14. The state's psychiatrist echoed the psychologist: "My opinion is that, yes, [Shaw] does have the ability to understand [the nature and purpose of his death sentence]." *Id.* at 59. Shaw's psychiatrist likewise expressed his belief that "Shaw does not have a mental [impairment that] will render him incapable of understanding the nature and purpose of [the] punishment about to be imposed upon him." Legal File of Competency Proceeding at 56.

After a careful review of the record, we have no difficulty concluding there is fair support for the state court's findings. Having reached this conclusion, we must defer to the state court's relevant factual determinations. 28 U.S.C. § 2254(d)(8) (1982); *Sumner v. Mata*, 455 U.S. 591, 597–98, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982) (per curiam); *Graham v. Solem*, 728 F.2d 1533, 1540–41 (8th Cir.) (en banc), *cert. denied*, 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984). Thus, the state court's decision that Shaw "understand[s] the nature and purpose of the punishment about to be imposed upon him" and is competent to be executed disposes of Shaw's eighth amendment claim. *See Penry*, 109 S.Ct. at 2954; *Smith*, 857 F.2d at 1230.

We affirm.