762 F.Supp. 853 (1991)
Bobby Lewis SHAW, Plaintiff,
v.
Paul DELO, Superintendent, Potosi Correctional Center, Defendant.
No. 90-824 C (2).
United States District Court, E.D. Missouri, E.D.
April 15, 1991.
*854 *855 Donald L. Wolff, St. Louis, Mo., for plaintiff.
John Morris, Asst. Atty. Gen., Bill Thompson, Staff Counsel, Office of the Clerk, Missouri Supreme Court, Jefferson City, Mo., for defendant.

MEMORANDUM
FILIPPINE, Chief Judge.
This matter is before the Court on the petition of Bobby Lewis Shaw for a writ of habeas corpus, on his motion to hold proceedings in abeyance pending submission of issues to state court,[1] and on his motion for additional funds for investigative and expert services before the Court.
On November 29, 1980, petitioner was convicted of murder and sentenced to death. The Missouri Supreme Court affirmed the conviction and sentence on direct appeal. State v. Shaw, 636 S.W.2d 667 (Mo.) (en banc), cert. denied, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). Thereafter, Shaw filed a motion for post conviction relief under Mo.R.Civ.P. 27.26 (repealed 1988). After a hearing, that motion was denied by the trial court, and the denial was affirmed on appeal. Shaw v. State, 686 S.W.2d 513 (Mo.Ct.App.1985). Petitioner then filed his first federal habeas corpus petition on June 3, 1985. This Court stayed that motion to allow Shaw to pursue a state determination of his competency pursuant to Mo.Rev.Stat. § 552.060 (1986).[2] Subsequently, on December 12, 1988, this Court adopted the Magistrate's Report and Recommendation finding petitioner competent to be executed and denied the writ of habeas corpus. The United States Court of Appeals for the Eighth Circuit affirmed this order and judgement on appeal. Shaw v. Armontrout, 900 F.2d 123 (8th Cir.1990). Subsequently, the Missouri Supreme Court set an execution date for Shaw of May 2, 1990. The petitioner filed his second petition for a federal writ of habeas corpus and stay of execution. This Court stayed the execution until it could fully review the claims presented and issue this memorandum and order. The Court will now address the grounds for relief presented in the petition for writ of habeas corpus.
The petitioner asserts the following grounds to the Court in asking for relief: 1) ineffective assistance of counsel in that counsel failed to investigate and present *856 evidence at trial of Shaw's impaired mental capacity as mitigating evidence on a theory of diminished capacity; 2) incompetency to be executed under the standards set out in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); 3) unconstitutional MAI jury instructions (numbers 17, 18, and 19) as interpreted by the standards set out in Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); 4) failure to submit mitigating instructions on the petitioner's mental condition in the penalty phase of his trial; and 5) denial of a fair opportunity to present his defense in both the guilt and sentencing phases because his psychiatric experts were incompetent or ineffective.
At the outset, the Court notes that in a successive petition, the Court must determine if the claims presented are procedurally or equitably barred. See Fed. R.Civ.P. 9(b); Mercer v. Armontrout, 864 F.2d 1429, 1433 (8th Cir.1988). A claim may be barred as a repetitive claim if it has been previously raised and determined on the merits in a prior federal habeas corpus action. Alternatively, it may be barred as an abuse of the writ if the claim was available at the time of the earlier petition but not raised at that time. Grounds one and two were raised in Shaw's previous habeas petition in this Court and, therefore, will be analyzed as repetitive claims. Grounds three, four, and five have not been raised before and will be analyzed as new claims.

REPETITIVE CLAIMS
In Sanders, the Supreme Court held that a court must give controlling weight to the denial of a prior application for federal habeas corpus "only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." Sanders v. United States, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963). The petitioner has the burden to show that "although the ground of the new application was determined against him on the merits on a prior application, the ends of justice would be served by a redetermination of the ground." Id. at 17, 83 S.Ct. at 1078.

Ground 1: Ineffective Assistance of Counsel
Petitioner claims that trial counsel was ineffective because he failed to utilize certain records, to investigate Shaw's background or to request a mental evaluation on the issue of diminished mental capacity, and to use this issue in a mitigation of punishment argument. This ground has been raised previously in the federal court.[3]
With regard to the second Sanders factor, on September 30, 1985, Magistrate Noce found that the portion of petitioner's complaint alleging ineffective assistance of counsel was procedurally defaulted because he abandoned it in his Rule 27.26 appeal.[4] Subsequently, after an evidentiary hearing on this issue, the magistrate found that petitioner failed to establish cause and actual prejudice for his procedural default in the state court, and the magistrate recommended that this claim be dismissed. This Court sustained and adopted that recommendation. (Memorandum and Order December 12, 1988).
The third Sanders factor requires petitioner to show that the ends of justice would be served by reaching the merits of Shaw's claim. In Kuhlmann v. Wilson, *857 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986), the Supreme Court held that the "ends of justice" require a petitioner ultimately to supplement his claim with a "colorable showing of factual innocence." Additionally, to prevail, a petitioner must show more than a mere disagreement with the prior disposition. Walker v. Lockhart, 726 F.2d 1238, 1250 (8th Cir. 1984) (en banc) (Arnold, J., concurring).
Shaw does not allege that he did not commit the murder. Rather, his basic argument is that had Shaw's symptoms of organic dysfunction been more forcefully and graphically developed and presented to the jury, they may have found him not guilty. However, Shaw's arguments in support of mitigation because of borderline mental retardation and organic brain syndrome do not differ significantly from previous arguments and evidence. Petitioner claims only that certain records, histories or tests were not performed or used. Evidence relating to Shaw's diminished mental capacity, low intelligence, and other mental defects were admitted and used during the trial. Shaw has not demonstrated that use of this additional evidence would indeed have produced any new conclusions or altered the trial strategy employed by counsel. For these reasons, the Court concludes that Shaw has not overcome the hurdle of demonstrating any "factual innocence" so as to fall within the exception to the cause and prejudice requirements. Therefore, the Court finds that the petitioner's claim is barred under Sanders. Relief will not be granted on this ground.

Ground 2: Incompetency to Be Executed
This ground is technically not a new ground since the petitioner already presented it in his first federal habeas corpus petition[5] and, after an extensive state hearing pursuant to Mo.Rev.Stat. § 552.060 (1986) on the merits,[6] the claim was denied. This denial was affirmed by the Eighth Circuit in Shaw v. Armontrout, 900 F.2d 123 (8th Cir.1990), after hearing specific arguments on the competency to be executed because of organic brain damage claim. That court further extensively reviewed the procedural protection afforded by the competency hearing under § 552.060 [Criminal Proceedings involving mental illness: Mental Disease or Defect upon Sentence of Death]. The ultimate test for competency requires that those who are executed know the fact of their impending execution and the reason for it. Ford, 477 U.S. at 422, 106 S.Ct. at 2608; Penry v. Lynaugh, 492 U.S. 302, 333, 109 S.Ct. 2934, 2954, 106 L.Ed.2d 256 (1989); Smith v. Armontrout, 857 F.2d 1228, 1230 (8th Cir. 1988) (per curiam). The Eighth Circuit specifically held that Missouri law embraces this eighth amendment standard as set out in Ford and, further, that Shaw's mental condition must be measured by this standard. Shaw, 900 F.2d at 125. Additionally, the Eighth Circuit held that the state court's finding that Shaw "understands the nature and purpose of the punishment about to be imposed upon him" and is competent to be executed disposes of the petitioner's eighth amendment claim. Shaw v. Armontrout, 900 F.2d at 126. See Penry, 109 S.Ct. at 2954; Smith, 857 F.2d at 1230.
Nonetheless, a person's mental condition is subject to change, and a previous disposition on the merits may not be pertinent to the mental condition as presented at the time of execution. However, the Court is also cognizant of the fact that this argument cannot be abused to require a competency hearing each time an execution date is set. Ford, 477 U.S. at 426, 106 S.Ct. at 2610. In order to be convicted and sentenced to death, a petitioner's competency must have been sufficiently clear to the trial court so as not to raise a serious *858 question. "The state therefore may properly presume that the petitioner remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process." Ford, 477 U.S. at 426, 106 S.Ct. at 2610 citing Ake, 470 U.S. at 82-83, 105 S.Ct. at 1096. In other words, there must be some new evidence, support or other pragmatic considerations indicating that the petitioner's mental status has deteriorated substantially since the last determination.
Shaw's last competency screening occurred in 1987. The Court will examine whether the petitioner has made a substantial showing of additional impairment from that date to the present.
The findings of the 1987 competency hearing reflect that the psychiatric expert chosen by Shaw testified with respect to Shaw's mental awareness, that Shaw was well oriented and in touch with reality; he had adequate attention and short term memory, well preserved insight and judgment and no psychotic thought content; and that he knew the type of punishment imposed upon him and the reason it was being imposed. Further, petitioner was aware that he had been unsuccessful in his legal challenges to the conviction and sentence and was cooperating with counsel to seek additional relief. See Report and Recommendation of United States Magistrate June 17, 1988. On the other hand, with respect to cerebral impairment, Shaw's doctor reported that Shaw's I.Q. was in the borderline range of nonretardation, abstract thinking was limited, mood was depressed and he showed signs of brain damage. This testimony was substantiated by the psychiatrist and a psychologist supplied by the state. Shaw v. Armontrout, 900 F.2d at 125. Despite the fact that the petitioner had organic brain syndrome in 1987, his presenting mental status at the competency hearing amply qualified him as having the requisite competency to be executed. Furthermore, in that same decision, the Eighth Circuit held that a "condemned inmate's mental faculties need not be unimpaired for the inmate to be declared fit for execution. Mental impairment exists in sufficiently varying degrees that an inmate may be brain damaged and still possess the `mental awareness required by the Eighth Amendment as a prerequisite to [the inmate's] execution.'" Shaw, 900 F.2d at 124 citing Ford v. Wainwright, 477 U.S. at 419, 106 S.Ct. at 2606 (Powell, J., concurring).
In support of his present incompetency to be executed claim, petitioner now argues that he has organic brain damage, a low mentality and a history of head traumas.[7] Symptoms include delirium, decompensation, concrete thinking, dementia, and depressed affect. However, these symptoms are not new. The history of traumas to the head and borderline intellectual functioning were documented and elicited during trial and in subsequent appeals and court actions. Symptoms of organic brain damage such as dementia, delirium, and decompensation are on record dating at least as far back as the original trial.
Regarding mental awareness, Dr. Cuneo, petitioner's expert, states in his 1990 affidavit presented in support of the petition now before the Court that the petitioner "may very well have some ability to understand the nature and purpose of the punishment about to be imposed on him."
After reviewing the affidavits submitted by Drs. Cuneo and Nuetzel, as well as the petitioner's arguments, the Court finds that the petitioner has not demonstrated any additional information sufficient to challenge the October 7, 1987, competency determination on the basis of changed mental capacity or lack of mental awareness. For these reasons, the grounds for incompetency to be executed will be denied.
At this time, it is appropriate for the Court to review petitioner's motion for funds for investigative and expert services in which he asserts that additional tests and reports are necessary to support this *859 claim of incompetency. While the requested school records, psychiatric social histories and neurological exams may enhance the interpretation and understanding of test results, their absence does not detract from the validity of the neuro-psychiatric tests already administered. It is undisputed that numerous tests have been administered throughout the years beginning before the original trial and up to the present action before the Court. In his motion, however, petitioner argues that additional tests are necessary to discover the "etiological basis/the most likely neuropathological process for the patient's deteriorated cerebral functioning." While the tests might be valuable as an academic, theoretical, and intellectual challenge to the professionals, petitioner has not shown they would be determinative as to his competence to be executed. For these reasons, as well as the Court's finding that petitioner has not produced evidence to warrant reconsideration of the finding that petitioner is competent to be executed, the motion for funds for investigative and expert services will be denied.

NEW CLAIMS
In reviewing a second federal habeas petition raising claims that were not raised in the original petition but could or should have been raised, the Court examines the claims for abuse of the writ. Sanders v. U.S., 373 U.S. at 17, 83 S.Ct. at 1078; Smith v. Armontrout, 888 F.2d 530, 540 (8th Cir.1989). The government must plead abuse of the writ. Sanders, 373 U.S. at 17, 83 S.Ct. at 1078. The burden then shifts to the petitioner to show that no abuse has occurred. Williams v. Lockhart, 862 F.2d 155, 159 (8th Cir.1988). Abuse of the writ may be demonstrated by a showing that the petitioner deliberately withheld a claim on his first application. Sanders, 373 U.S. at 18, 83 S.Ct. at 1078. Alternatively, where no deliberate withholding is shown, the Court will consider the grounds if petitioner shows a "cause" which excuses the procedural default and "prejudice" resulting from the omission. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If a petitioner is unable to show "cause," however, he may still avoid the procedural bar to the new claim if he shows that the "constitutional violation has probably resulted in the conviction of one who is actually innocent...." Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Smith v. Armontrout, 888 F.2d at 541; Harper v. Nix, 867 F.2d 455, 457 (8th Cir. 1989).
Cause requires a showing that counsel's efforts to comply with procedure were impeded by some objective external factors. Harper v. Nix, 867 F.2d at 456. An assessment of prejudice in the context of a death sentence requires a showing that the factfinder, absent the errors, would have found reasonable probability that the balance of aggravating and mitigating circumstances did not warrant death. Strickland v. Washington, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

Grounds 3 & 4: Missouri Jury Instructions Violated Constitutional Rights
The petitioner presents a two prong attack on the jury instructions. First he argues that MAI 17, 18, and 19, insofar as they suggest a unanimity requirement, violate Mills and, second, the jury should have received a diminished capacity mitigating instruction. Each ground will be addressed separately.
A. The Mills claim: Petitioner characterizes his challenge to the jury instructions Nos. 17, 18, 19 as one raising "substantial new grounds" for relief based on the Supreme Court opinion in Mills v. Maryland. The Court disagrees. Mills was decided after Shaw's first federal habeas petition was submitted to the Court but before the Court ruled on that petition on December 12, 1988. There were sufficient procedures available to the petitioner that would have enabled him to present this issue to the Court for consideration in the original writ.
Furthermore, this challenge could have been made even before the Mills decision. The Eighth Circuit recently held that a *860 federal habeas review of a Mills-type challenge to jury instructions, where the challenge of the jury instruction had not been raised either in any state action or in the first federal habeas action, is barred. Stokes v. Armontrout, 893 F.2d 152 (8th Cir.1989). In Stokes, just as in the instant case, in order to establish "cause," the petitioner argued that Mills establishes a new rule based on a novel ground for relief. The Eighth Circuit has repeatedly rejected this argument both in Stokes, ("that juries must be free to consider any and all evidence as a mitigating factor.... has been a familiar feature of the legal landscape since 1978....") 893 F.2d at 155, and in Smith, ("[t]he tools with which to make a Mills argument were available in [1979], when this case was tried.") 888 F.2d at 545. Shaw likewise argues that the Mills case raises a substantial new ground and the claim could not previously have been brought before the Court. Based on the precedent set out in Stokes, the Court finds that this claim is procedurally barred.
Nonetheless, petitioner argues that this Court should reach the merits of his claim based on the actual innocence exception of Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). He asserts in the petition that there is a "substantial chance that a jury fully informed about petitioner's mental defect of organic brain syndrome would result in a different outcome at his trial...." However, the Court notes that evidence of the symptoms were presented at trial. Petitioner admits that the severity of his symptoms of organic brain damage have only recently been diagnosed but that, in all probability, he had the disease at the time of the offense and trial. This is indicative of the progressive nature of the disease process, new terminology and different interpretations of the same symptoms. The petitioner has not demonstrated to the Court that the symptoms he exhibits today represent the same degree of claimed severity or infirmity as he exhibited at the time of the crime and trial so as to lead a jury to acquit him or find him factually innocent. In other words, to prevail on this claim, Shaw must indicate that this condition at the time of the trial was in fact at least equal to what he demonstrates today, i.e., worse than that which was presented to the jury for their consideration. He rather seems to contend that his condition was not emphasized and elaborated upon. This amounts to a new trial strategy rather than support for "factual innocence".
B. No diminished capacity mitigating instruction: The issue of the diminished capacity instruction was raised and rejected on petitioner's direct appeal.[8] The issue of other mitigating instructions was raised in the argument of ineffective counsel in the Rule 27.26 motion. Neither issue was raised in the first federal habeas petition where such a challenge could have been raised. The petitioner, therefore, must demonstrate cause and prejudice in order to overcome the procedural bar. The argument that the mitigating circumstances have only recently become known fails because it was raised in the 27.26 motion and for the same reasons given above in response to previous arguments. In particular, Shaw's presenting personality and organic symptoms as reflected in the reports of interviews and testing done on the petitioner from the time of the trial and throughout the appeals process were available to be used by his defense counsel in any number of ways including an argument for jury instructions on diminished capacity or mitigating circumstances. Petitioner cannot now introduce new terminology, interpretations, and different trial strategies based on the same or similar evidence in order to relitigate or re-examine issues which should have been brought previously or to claim that the petitioner would not be found guilty of the crime.
The petitioner has not overcome the cause and prejudice standard set out in Wainwright v. Sykes, nor has he demonstrated *861 any evidence relating to colorable, factual innocence. Therefore these grounds are denied.

Ground 5: Ineffective Psychiatric Assistance
This claim also could have been brought earlier particularly since the case law cited to by petitioner, Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), was decided in February, 1985, and available before the first federal habeas petition was filed on June 3, 1985. Thus, this claim is also subject to a cause and prejudice analysis or a showing of factual innocence review.
Petitioner argues that he suffers from the mental disease process of organic brain syndrome, the severity of which was only recently discovered. In support, he submits the affidavits of two experts essentially detailing the symptoms already in evidence. As previously noted, these experts reviewed Shaw's symptoms. These symptoms were strikingly similar to those already on record, having been elicited by the previous psychiatrists whom petitioner now alleges were incompetent.
Petitioner asks the Court to review this claim as vital to the "ends of justice" since he is challenging the fundamental fairness of the trial itself. He further argues that, had competent psychiatric assistance been provided, it would have reflected that the petitioner's mental capacity was so impaired that he could not be guilty of murder. The Eighth Circuit recently faced a similar challenge when a petitioner argued that lack of discovered evidence regarding mental retardation rendered his pretrial evaluation of the mental condition professionally inadequate. This, he claimed, was a denial of due process since the jury could not fully consider evidence of his retardation in their evaluation of his confession. Fairchild v. Lockhart, 900 F.2d 1292, 1293 (8th Cir.1990). In that case, the court held that lack of discovered evidence during a pretrial evaluation did not satisfy the cause requirement for a second federal habeas petition because there was evidence from other sources such as school records which could have been used to support the claim. Furthermore, those tests that indicated the presence of mental retardation were inconclusive.
In the instant case, the pretrial psychiatrist did elicit symptoms of organic brain syndrome and borderline I.Q. functioning. Additionally, there were other sources that were available to support this claim. And finally, of the many tests performed, experts have read and interpreted them differently so as to produce inconclusive results. So, as in Fairchild, this Court concludes that the claim alleging lack of discovered evidence by the psychiatrist at the time of the trial does not satisfy the cause requirement for this second habeas petition.
With regard to the plaintiff's assertion that the trial was not fundamentally fair because he could not get his mental status accurately before the jury, the Court notes that it is well settled that fundamental fairness entitles a defendant to "an adequate opportunity to present [his] claims fairly within the adversary system." Ross v. Moffitt, 417 U.S. 600, 612, 94 S.Ct. 2437, 2444-45, 41 L.Ed.2d 341 (1974). Furthermore, when an indigent defendant can show that "his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." Ake, 470 U.S. at 74, 105 S.Ct. at 1091-92.
The Supreme Court in Ake, held that at minimum, the state will provide a neutral, competent psychiatrist who must "conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 83, 105 S.Ct. at 1096. The Supreme Court went on to say that an indigent defendant does not have any constitutional right to choose a psychiatrist of his own personal liking or to receive funds to hire his own. Rather, the emphasis should be on a neutral psychiatrist. Id. at 84-85, 105 S.Ct. at 1096-97.
In this case, there is no question that Shaw's sanity was raised prior to trial via a plea of not guilty by reason of mental *862 disease or defect.[9] Nor is there any dispute that the trial court appointed a psychiatrist to test and evaluate Shaw and to assist counsel in preparation for the defense at trial as well as a psychiatrist and psychologist in preparation for the competency hearing pursuant to Mo.Rev.Stat. § 552.060 (1986), held March 5, 1987. At issue is the competency of the appointed psychiatrist at the trial level. The few courts that have examined the issue of psychiatric expert competency have been reluctant to engage in a "battle of the experts in a competence review ... and engage in a form of `psychiatric medical malpractice' review as part and parcel of its collateral review of state court judgements." Silagy v. Peters, 905 F.2d 986, 1013 (7th Cir.1990).
The Court is mindful that the science of psychiatry in terms of evaluating mental status requires a certain degree of subjective judgement and is a discipline fraught with "subtleties and nuances." Ford, 477 U.S. at 426, 106 S.Ct. at 2610. Psychiatrists do not always agree. Nonetheless, the petitioner's claim that psychiatric assistance was ineffective because it did not discover the symptoms which were found by the latest experts is not supported by the facts. The symptoms underlying a claim of diminished capacity whether due to organicity or borderline low intelligence were discovered, developed and examined in both the trial and the competency hearing. It is undisputed that numerous tests were administered over the years and many were repeated. It is also undisputed that there are tests which were not administered. As the court in Fairchild pointed out, "although alternative techniques exist ... failing to use them was not professionally inadequate." Fairchild, 900 F.2d at 1296. All the factual elements to support petitioner's present contentions were elicited by the court appointed psychiatric experts.
Because the state provided several neutral and qualified psychiatric experts that evaluated and assisted in the defense of the petitioner both during the trial and the competency hearing and because these experts identified many of the same symptoms that are offered now as newly discovered, the Court will deny this ground.
In sum, all of the grounds raised by the petitioner in this petition for writ of habeas corpus will be denied. The execution which was stayed pending submission of this order will be further stayed for thirty days from the date of this order to allow petitioner to file a notice of appeal to the United States Court of Appeals for the Eighth Circuit.
An appropriate order will accompany this memorandum and order.
IT IS HEREBY ORDERED that the petitioner's motion to hold these proceedings in abeyance is DENIED as moot.
IT IS FURTHER ORDERED that his motion for funds for investigative and expert services is DENIED.
NOTES
[1] On March 5, 1991, the Supreme Court of Missouri denied the petitioner's state habeas corpus petition which was the basis of this motion to hold these proceedings in abeyance. Therefore, the motion will be denied as moot.
[2] After an evidentiary hearing, the Cole County Circuit Court certified on October 7, 1987, that petitioner was competent to be executed.
[3] The ground alleging ineffective assistance of counsel for failure to discover certain evidence relating to mental status before trial as asserted in the original and amended writ of habeas corpus was dismissed with prejudice. Shaw v. Delo, 85-1263 (Order Dec. 12, 1988). Petitioner also raised this issue in his state Rule 27.26 action, and it was denied on the merits.
[4] The Rule 27.26 motion claimed in part that defense counsel failed to properly develop evidence of petitioner's mental condition in support of a diminished mental capacity defense and as evidence in mitigation of punishment. After this claim was denied on the merits, the defense counsel abandoned it on appeal seeking only to appeal those issues upon which he had a substantial chance of success. The state appellate court found that this did not constitute ineffective assistance of counsel.
[5] However, Mo.Rev.Stat. § 552.060 (1986) states that no person may be executed if, as a result of mental defect or disease, he cannot understand the nature and purpose of the punishment. Thus, competency to be executed may be redetermined at the time of execution under certain circumstances if substantial new evidence puts the previous competency determination in question.
[6] In re Competency of Bobby Lewis Shaw, No. CV186-897CC, slip op. (Mo.Cir.Ct. Oct. 7, 1987), appeal dismissed, No. 69954 (Mo.Sup.Ct. Nov. 12, 1987).
[7] Petitioner is not claiming insanity due to psychosis. Symptoms of hallucinating as noted by Dr. Cuneo and in psychiatric records of 1974, 1978, and 1986, are reflective of delirium associated with organic brain damage. See Cuneo Affidavit at 3.
[8] State v. Shaw, 636 S.W.2d 667 (Mo.) (en banc) cert. denied, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). The petitioner claimed that the "trial court erred in failing to instruct the jury on diminished capacity during the guilt phase of the trial and ... in failing to submit the diminished capacity to the jury to the sentencing phase as a mitigating circumstance."
[9] This plea, however, was dropped by the petitioner before the end of the trial.